UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

CERTAIN UNDERWRITERS AT LLOYDS, LONDON, INDIAN HARBOR INSURANCE COMPANY, QBE SPECIALTY INSURANCE COMPANY, STEADFAST INSURANCE COMPANY, GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA, UNITED SPECIALTY INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, HDI GLOBAL SPECIALTY SE, OLD REPUBLIC UNION INSURANCE COMPANY, GEOVERA SPECIALTY INSURANCE COMPANY, and TRANSVERSE SPECIALTY INSURANCE COMPANY,

Civil Action No. _____

**Petitioners' Memorandum of Law in Support of their Petition to Compel Arbitration**

          Petitioners,

vs.

3131 VETERANS BLVD LLC,

          Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Of Counsel:

  Jeffrey S. Weinstein
  David A. Nelson
  Samuel B. Weiss
  Mound Cotton Wollan & Greengrass LLP
  One New York Plaza Floor 44
  New York, New York 10004
  Tel: (212) 804-4200
  Fax: (212) 344-8066
  JWeinstein@moundcotton.com
  DNelson@moundcotton.com
  SWeiss@moundcotton.com
  *Attorneys for Petitioners*

## **Table of Contents**

Preliminary Statement ........................................................................................................................1

Factual Background .........................................................................................................................3

1.       The Loss and Claim ..................................................................................................3

2.       Breaching the Policy, Respondent Sues the Insurers .........................................................4

Argument .........................................................................................................................................4

I.       The Court Should Compel Arbitration ................................................................................4

      A.       Governing Law ........................................................................................................4

            1.       The New York Convention ..........................................................................5

            2.       The FAA's General Provisions ....................................................................6

      A.       Standard of Review ................................................................................................7

II.      The Arbitration Agreement is Both Valid and Embraces the Parties' Dispute ...................8

      A.       The Arbitration Agreement is Valid ......................................................................8

III.    The Policy's Broad Delegation Clause Mandates that the Arbitration Tribunal Determine all Issues, Including the Agreement's Validity and Scope ............................................9

IV.    That Respondent Purports to Waive its Louisiana Claims Against the Foreign Carriers is Irrelevant. ...............................................................................................................11

Conclusion .....................................................................................................................................12

## Table of Authorities

Page(s)

**Cases**

ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.,
  307 F.3d 24 (2d Cir. 2002) .......................................................................................... 9

AT & T Techs., Inc. v. Commc'ns Workers of Am.,
  475 U.S. 643 (1986) ............................................................................................ 9, 12

Badgerow v. Walters,
  142 S. Ct. 1310 (2022) ................................................................................................ 5

Bell v. Cendant Corp.,
  293 F.3d 563 (2d Cir. 2002) ........................................................................................ 11

Bensadoun v. Jobe-Riat,
  316 F.3d 171 (2d Cir. 2003) ........................................................................................ 9

Best Concrete Mix Corp. v. Lloyd's of London Underwriters,
  413 F. Supp. 2d 182 (E.D.N.Y. 2006) ........................................................................ 10

Certain Underwriters at Lloyd's, London v. Vintage Grand Condo. Ass'n, Inc.,
  2019 WL 760802 (S.D.N.Y. Feb. 6, 2019) ................................................................ 12

Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC,
  967 F. Supp. 2d 756 (S.D.N.Y. 2013) .......................................................................... 9

Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.,
  58 F.3d 16 (2d Cir. 1995) .......................................................................................... 11

Com. Risk Reinsurance Co. v. Sec. Ins. Co. of Hartford,
  526 F. Supp. 2d 424 (S.D.N.Y. 2007) ........................................................................ 10

Corpus Christi Indep. Sch. Dist. v. Amrisc, LLC,
  2019 WL 2051696 (E.D.N.Y. May 9, 2019) .............................................................. 12

Crystal Pool AS v. Trefin Tankers Ltd.,
  2014 WL 1883506 (S.D.N.Y. May 9, 2014) .............................................................. 10

David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London),
  923 F.2d 245 (2d Cir. 1991) ........................................................................................ 8

First Options of Chicago, Inc. v. Kaplan,
  514 U.S. 938 (1995) .................................................................................................. 11

In re Am. Exp. Fin. Advisors Sec. Litig.,
  672 F.3d 113 (2d Cir. 2011) ...................................................................................... 11

In re MF Glob. Holdings Ltd.,
    569 B.R. 544 (Bankr. S.D.N.Y. 2017) .................................................................................. 6

Interstate Brands Corp. v. Bakery Drivers & Bakery Goods Vending Machines, Loc. Union No.
    550, Int'l Bhd. of Teamsters, 167 F.3d 764 (2d Cir. 1999) ......................................................... 9

Int'l Eng'g & Constr. S.A. v. Baker Hughes,
    399 F. Supp. 3d 194 (S.D.N.Y. 2019) .............................................................................. 5, 8

Katz v. Cellco P'ship,
    794 F.3d 341 (2d Cir. 2015) ............................................................................................ 8

Liberty Re (Bermuda) Ltd. v. Transamerica Occidental Life Ins. Co.,
    2005 WL 1216292 (S.D.N.Y. May 23, 2005) ...................................................................... 7

Matter of DeVera,
    32 N.Y.3d 423 (N.Y. 2018) ........................................................................................... 12

McDermott Int'l, Inc. v. Lloyds Underwriters of London,
    944 F.2d 1199 (5th Cir. 1991) ......................................................................................... 7

Meadows Indem. Co. v. Baccala & Shoop Ins. Servs., Ins.,
    760 F. Supp. 1036 (E.D.N.Y. 1991) ............................................................................... 10

Mehler v. Terminix Int'l Co. L.P.,
    205 F.3d 44 (2d Cir. 2000) ........................................................................................... 12

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
    473 U.S. 614 (1985) ..................................................................................................... 7

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
    460 U.S. 1 (1983) ....................................................................................................... 11

PaineWebber Inc. v. Bybyk,
    81 F.3d 1193 (2d Cir. 1996) ................................................................................. 9, 11, 12

Prima Paint Corp. v. Flood & Conklin Mfg. Co.,
    388 U.S. 395 (1967) ..................................................................................................... 8

Scherk v. Alberto-Culver Co.,
    417 U.S. 506 (1974) ..................................................................................................... 6

Syncora Guarantee Inc. v. HSBC Mexico, S.A.,
    861 F. Supp. 2d 252 (S.D.N.Y. 2012) ............................................................................... 9

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,
    241 F.3d 135 (2d Cir. 2001) ........................................................................................... 8

WorldCrisa Corp. v. Armstrong,
    129 F.3d 71 (2d Cir. 1997) .................................................................................... 12

Zelnik v. Fashion Inst. of,
    Tech., 464 F.3d 217 (2d Cir. 2006) ........................................................................ 9

**Statutes**

9 U.S.C. § 1 ........................................................................................................... 6

9 U.S.C. § 3 ................................................................................................... 1, 8, 13

9 U.S.C. § 4 ....................................................................................................... 8, 13

9 U.S.C. § 202 ..................................................................................................... 7, 8

9 U.S.C. § 203 .......................................................................................................... 5

9 U.S.C. § 206 ..................................................................................................... 1, 7

9 U.S.C. § 208 .......................................................................................................... 5

**Rules**

Fed. R. Civ. P. 56(c) ............................................................................................... 9

Petitioners, Certain Underwriters at Lloyds, London, Indian Harbor Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, General Security Indemnity Company of Arizona, United Specialty Insurance Company, Lexington Insurance Company, HDI Global Specialty SE, Old Republic Union Insurance Company, GeoVera Specialty Insurance Company, and Transverse Specialty Insurance Company (collectively, the "Insurers"), by and through their attorneys, Mound Cotton Wollan & Greengrass LLP, respectfully submit this memorandum of law in support of their Petition, pursuant to 9 U.S.C. § 3 and 4, and 9 U.S.C. § 206, for an order compelling Respondent's participation in the arbitration process demanded under the binding Arbitration Agreement in the insurance policy under which Respondent seeks coverage and to stay this litigation pending arbitration.

### Preliminary Statement

This is an insurance dispute. Petitioners issued an insurance policy bearing Account ID 815222 to 2121 Borders LLC (the "Insured") for a one-year period commencing on February 11, 2021. Following damage to its property located at 3131 Veterans Memorial Blvd, Metairie, Louisiana 70002 (the "Property") during August 2021's Hurricane Ida, the Insured made an insurance claim under the Policy. Then, months later, the Insured sold the Property to Respondent, and in connection with that sale, executed an "Assignment and Assumption of Contract, Warranties, Guaranties, and Insurance Claims, Rights and Proceeds" in which the Insured assigned all rights under the Policy related to its claims for Ida-related damage to Respondent.[1]

There remains in dispute insurance proceeds between Respondent and the Insurers and to resolve such disputes, the Policy contains an Arbitration Agreement:

---

[1] The Insurers do not concede that this assignment was valid. But as discussed below, that too is a "matter in dispute" which must be arbitrated.

1

ARBITRATION CLAUSE: All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.

Unless the parties agree upon a single Arbitrator within thirty days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his Arbitrator and give written notice thereof to the Respondent. Within thirty days of receiving such notice, the Respondent shall appoint his Arbitrator and give written notice thereof to the Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.

Should the Arbitrators fail to agree, they shall appoint, by mutual agreement only, an Umpire to whom the matter in difference shall be referred. If the Arbitrators cannot agree to an Umpire, either may request the selection be made by a judge of a New York court.

Unless the parties otherwise agree, the Arbitration Tribunal shall consist of persons employed or engaged in a senior position in Insurance underwriting or claims.

The Arbitration Tribunal shall have power to fix all procedural rules for the holding of the Arbitration including discretionary power to make orders as to any matters which it may consider proper in the circumstances of the case with regard to pleadings, discovery, inspection of documents, examination of witnesses and any other matter whatsoever relating to the conduct of the Arbitration and may receive and act upon such evidence whether oral or written strictly admissible or not as it shall in its discretion think fit.

Each party will pay its chosen Arbitrator, and also bear the other expenses of the Arbitration and Umpire equally.

The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance.

The Arbitration Tribunal may not award exemplary, punitive, multiple, consequential, or other damages of a similar nature.

A decision agreed to by any two members of the Arbitration Tribunal shall be binding. The award of the Arbitration Tribunal shall be in writing and binding upon the parties who covenant to

> carry out the same. If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in any territory in which the party in default is domiciled or has assets or carries on business.

See Ex. 1 to the November 18, 2022 Decl. of Jeffrey S. Weinstein at p. 24.

Under this provision, "all matters in difference between" the Insurers and Respondent "in relation to this insurance, shall be referred to an Arbitration Tribunal." And the Arbitration Agreement provides that the seat of the arbitration must be in New York, and that the tribunal must apply New York law.

Here, the parties disagree over – *for example* – the proper amount of loss, the nature of Respondent's purported waiver of claims against certain carriers, and whether a purported assignment from the Insured to Respondent is valid. To resolve all these issues (and any related disputes), the Policy is clear: under the Policy, the parties must arbitrate. Respondent has failed to do so. Instead, in violation of the Policy's Arbitration Agreement, it sued some – but not all – of the Insurers in state court in Louisiana.

This Court should not allow Respondent to avoid the Arbitration Agreement it bargained for. Instead, consistent with the Federal Arbitration Act, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention" or the "Convention"), this Court should compel Respondent to arbitrate any disputes between it and the Insurers.

## Factual Background

1. **The Loss and Claim**

This dispute arises from alleged property damage because of Hurricane Ida, which made landfall on or about August 29, 2021. Respondent seeks insurance proceeds from the Insurers – collectively – under the coverages set forth in the Policy, for alleged losses including property

damage, lost business income, extra expenses, and consequential damages, as well as statutory penalties. At all times relevant, the Insurers, who jointly subscribe to the Policy, have acted in concert in the investigation, evaluation, and payment made subject of the Respondent's claims. And each of the Insurers have demanded that Respondent arbitrate the matters in dispute between them.

2. **Breaching the Policy, Respondent Sues the Insurers**

In violation of the Policy's Arbitration Agreement, on September 15, 2022, Respondent sued the Insurers in Louisiana state court, alleging causes of action for both breach of contract and various statutory violations under Louisiana law. See Ex. 2 to the Weinstein Decl., Respondent's Louisiana Complaint. Given the clear matters in difference between the Parties, on November 18, 2022, the Insurers invoked the Arbitration Agreement and demanded that Respondent arbitrate all matters in difference between Respondent and the Insurers regarding the claimed loss, including all claims asserted in the Louisiana Lawsuit. See Ex. 3 to the Weinstein Decl., Arbitration Demand.

**Argument**

I. **The Court Should Compel Arbitration**

   A. **Governing Law**

Two separate chapters of the United States Code require Respondent to arbitrate its dispute with the Insurers. The first is the FAA: 9 U.S.C. § 1-16. The second is 9 U.S.C. § 201-08, which implements the New York Convention's provisions.[2] As discussed below, the Convention

---

[2] While the FAA does not – on its own – confer subject matter jurisdiction, the Convention does. Compare Badgerow v. Walters, 142 S. Ct. 1310, 1314 (2022) (Section 4 of the FAA "instructs a federal court to 'look through' the petition [to compel arbitration] to the 'underlying substantive controversy' between the parties") with 9 U.S.C. § 203 ("An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.").

4

applies here because it involves a commercial contract between a domestic and foreign entity. But the FAA's general provisions also apply so long as they do not conflict with the Convention. See 9 U.S.C. § 208; Int'l Eng'g & Constr. S.A. v. Baker Hughes, 399 F. Supp. 3d 194, 199 (S.D.N.Y. 2019).

1. **The New York Convention**

The New York Convention "is an international treaty mandating that courts in signatory states 'shall, at the request of one of the parties [to an arbitration agreement], refer the parties to arbitration.'" In re MF Glob. Holdings Ltd., 569 B.R. 544, 551 (Bankr. S.D.N.Y. 2017) (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 527 (1974)). Its goal and principal purpose is "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which the agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." Scherk, 417 U.S. at 520 n. 15.

More than one hundred countries have signed the Convention, including the United States, the Federal Republic of Germany, and the United Kingdom of Great Britain and Northern Ireland. Germany has been a Contracting State since 1961.[3] The United States has been a Contracting State since 1970. McDermott Int'l, Inc. v. Lloyds Underwriters of London, 944 F.2d 1199, 1208 (5th Cir. 1991) (tracing history of the Convention). And the United Kingdom has been a Contracting State since 1975.[4]

The Convention applies to arbitration proceedings arising out of commercial legal relationships where at least one foreign party is involved. See 9 U.S.C. § 202. Here, HDI is a German entity, Certain Underwriters are U.K. entities, and Respondent is a domestic entity – the

---

[3] See generally, https://newyorkconvention1958.org/index.php?lvl=cmspage&pageid=11&menu=577&opac_view=-1.

[4] See generally, https://newyorkconvention1958.org/index.php?lvl=cmspage&pageid=11&menu=612&opac_view=-1.

5

Convention therefore applies. Cf. Liberty Re (Bermuda) Ltd. v. Transamerica Occidental Life Ins. Co., 2005 WL 1216292, at *2 (S.D.N.Y. May 23, 2005) (applying Convention to dispute between Bermuda and Iowa corporations).

Moreover, the strong federal policy favoring arbitration applies equally to international transactions. See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985) (The New York Convention reinforces "the emphatic federal policy in favor of arbitral dispute resolution," which "applies with special force in the field of international commerce.").

Section 206 of the Convention provides that a "court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206. The "threshold question [under § 206] is whether a valid agreement to arbitrate exists in the context of an international commercial agreement." International Engineering, 399 F. Supp. 3d at 199; see also 9 U.S.C. § 202. And if a court finds that such an agreement exits, it "must compel arbitration of any dispute falling within the scope of the agreement pursuant to the terms of the agreement." U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 146 (2d Cir. 2001).

2. **The FAA's General Provisions**

Chapter One of the FAA's general provisions applies to any arbitration agreement involving interstate or international commerce, including commerce involving U.S. Territories. See 9 U.S.C. § 1; see also David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London), 923 F.2d 245, 249 (2d Cir. 1991) (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S.

6

395, 402 (1967), that the FAA "applies in federal court to [] suits which relate to contracts involving interstate or international commerce").

Section 4 of the FAA allows a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Thus, if a court determines that there is a valid written arbitration agreement and one party has refused to arbitrate under it, the court "*shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4 (emphasis added). And Section 3 of the FAA requires courts to stay litigation when the parties' claims have been referred to arbitration. 9 U.S.C. § 3. This mandatory stay is consistent with the FAA's "statutory scheme and pro-arbitration policy." Katz v. Cellco P'ship, 794 F.3d 341, 345 (2d Cir. 2015) ("The plain language [of 9 U.S.C. § 3] specifies that the court 'shall' stay proceedings pending arbitration, provided an application is made and certain conditions are met. It is axiomatic that the mandatory term 'shall' typically creates an obligation impervious to judicial discretion.") (cleaned up).

A.     **Standard of Review**

District courts in the Second Circuit apply the summary judgment standard when considering a motion to compel arbitration. See Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003); Syncora Guarantee Inc. v. HSBC Mexico, S.A., 861 F. Supp. 2d 252, 258 (S.D.N.Y. 2012). Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). Therefore, an order compelling arbitration will be appropriate if there is no genuine issue as to any material fact about the dispute's arbitrability. See, e.g., Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013).

7

When the moving party has documented particular facts in the record, the opposing party must "set forth specific facts showing that there is a genuine issue for trial" to defeat a motion to compel arbitration. See Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 224 (2d Cir. 2006). Whether the opposing party believes the "dispute to be arbitrable is irrelevant to the arbitrability" of the claims. See Interstate Brands Corp. v. Bakery Drivers & Bakery Goods Vending Machines, Loc. Union No. 550, Int'l Bhd. of Teamsters, 167 F.3d 764, 769 (2d Cir. 1999).

The Second Circuit follows a two-part test when determining the arbitrability of claims: (1) whether the parties have entered into a valid agreement to arbitrate and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement. ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co., 307 F.3d 24, 28 (2d Cir. 2002). But "the parties themselves may provide that the arbitrator, not the court, shall determine whether an issue is arbitrable." PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir. 1996); AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986) (parties may agree to arbitrate arbitrability). Therefore, if the parties' contract evidences their intent to submit questions of arbitrability to the arbitrators, the court need not reach part two of this two-part test.

II. **The Arbitration Agreement is Both Valid and Embraces the Parties' Dispute**

    A.    **The Arbitration Agreement is Valid**

Article II of the Convention lays out which arbitration agreements are subject to the Convention. It states, in relevant part:

> 1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.
>
> 2. The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, signed by

8

> the parties or contained in an exchange of letters or telegrams.

The Convention, Article II.

Moreover, this Court has routinely acknowledged jurisdiction where one of the parties to an arbitration agreement is domiciled outside the United States. Crystal Pool AS v. Trefin Tankers Ltd., 2014 WL 1883506, at *1–2 (S.D.N.Y. May 9, 2014) (citing Com. Risk Reinsurance Co. v. Sec. Ins. Co. of Hartford, 526 F. Supp. 2d 424, 427 (S.D.N.Y. 2007)); see also, Meadows Indem. Co. v. Baccala & Shoop Ins. Servs., Ins., 760 F. Supp. 1036 (E.D.N.Y. 1991).

Here, the Policy under which Respondent makes its claim contains a mandatory arbitration agreement. Further, that Arbitration Agreement dictates the arbitration must be held in New York and is subject to New York law. See Ex. 1 to the Weinstein Decl. at p. 24. And this dispute arises out of a commercial legal relationship. See, e.g., Best Concrete Mix Corp. v. Lloyd's of London Underwriters, 413 F. Supp. 2d 182, 188 (E.D.N.Y. 2006) (assuming that an insurance dispute is commercial). Finally, as discussed above, HDI is a German entity and Certain Underwriters are U.K. entities. Because there is at least one party to the Arbitration Agreement that is not a citizen of the United States, the Arbitration Agreement is governed by the Convention, and this Court has jurisdiction over this dispute.

Nor does Respondent dispute the Policy's validity; indeed, it has both made a claim and sued for recovery under it. The Insurers therefore request that the Court find that a valid arbitration agreement exists between the parties.

### III. **The Policy's Broad Delegation Clause Mandates that the Arbitration Tribunal Determine all Issues, Including the Agreement's Validity and Scope**

The FAA presumes that the issue of arbitrability should be resolved by the courts. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944–45 (1995). But the issue of

arbitrability may be referred to the arbitrator if "there is clear and unmistakable evidence from the arbitration agreement . . . that the parties intended that the question of arbitrability shall be decided by the arbitrator." Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002) (cleaned up); PaineWebber, 81 F.3d at 1198 ("the parties themselves may provide that the arbitrator, not the court, shall determine whether an issue is arbitrable").

The federal policy favoring arbitration is well-established and requires courts "to construe arbitration clauses as broadly as possible." Collins & Aikman Prod. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 19 (2d Cir. 1995) (cleaned up). Any "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 128 (2d Cir. 2011) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983) (questions of arbitrability must be addressed "with a healthy regard for the federal policy favoring arbitration")). Therefore, an order compelling arbitration must be granted "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT & T Technologies, Inc., 475 U.S. at 650.

The "existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible [to] an interpretation that [it] covers the asserted dispute." WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997) (cleaned up). Here, the Arbitration Agreement contains a clearly and unmistakable broad delegation clause that requires that "all matters in difference" in this dispute, including "its formation and validity, and whether arising during or after the period of this insurance," be submitted to the arbitration panel. This necessarily includes gateway rulings on threshold arbitrability issues. Because the broad delegation clause is valid and binding, Respondent's challenges, if any, including those regarding arbitrability itself, must

be submitted to the arbitration panel. See, e.g., Matter of DeVera, 32 N.Y.3d 423, 435 (N.Y. 2018) (under New York law, "'all' means all"); see also Mehler v. Terminix Int'l Co. L.P., 205 F.3d 44, 49 (2d Cir. 2000) ("any controversy or claim between [the parties] arising out of or relating to" the Agreement is "indisputably broad").

New York courts have interpreted this exact provision, each time concluding that this wording required arbitration of all disputes between the parties. See, e.g., Corpus Christi Indep. Sch. Dist. v. Amrisc, LLC, 2019 WL 2051696, at *3 (E.D.N.Y. May 9, 2019) ("the insurance policy contains a valid delegation clause that 'clearly and unmistakably delegate[s] the authority to adjudicate' plaintiff's claim to the arbitrator") (citing PaineWebber, 81 F.3d at 1195–96 (2d Cir. 1996)); see also Certain Underwriters at Lloyd's, London v. Vintage Grand Condo. Ass'n, Inc., 2019 WL 760802, at *5 (S.D.N.Y. Feb. 6, 2019) ("The arbitration clause is compulsory. It applies to '*all matters in difference* between the Insured and these Companies in relation to this insurance.' There exists in this situation a 'difference between the Insured and these Companies in relation to this insurance' – specifically, a dispute over whether the Policy covers the loss. Under the plain terms of the Policy, any such dispute must be arbitrated. Period. End of story.") (cleaned up).

IV. **That Respondent Purports to Waive its Louisiana Claims Against the Foreign Carriers is Irrelevant.**

In a last-ditch effort to evade this Court's jurisdiction, Respondent's Louisiana Complaint states that it "is not making a claim against" the Foreign Carriers – Certain Underwriters and HDI – and that it "waives any further rights against" them. This concession is irrelevant.

As discussed above, the Arbitration Agreement reserves "**all** matters in difference" (emphasis added) to the arbitrators. And it is the Insurers – all of them – who demanded arbitration from Respondent. Whether the Foreign Carriers owe Respondent anything for its

11

purported losses, and whether Respondent has a claim against the Foreign Carriers are "matters in difference" between the Foreign Carriers and Respondent and must therefore be arbitrated.

## Conclusion

For these reasons, Petitioners request that the Court:

1. Issue an order compelling arbitration pursuant to 9 U.S.C. § 4 and 206;

2. Retain jurisdiction over this matter until a complete panel of arbitrators is formally constituted according to the Arbitration Agreement;

3. Stay this litigation pending the outcome of the arbitration pursuant to 9 U.S.C. § 3; and

4. Enjoin Respondent from litigating the subject matter of this lawsuit and the arbitration in any venue other than before an arbitration panel.

Dated: New York, New York
November 18, 2022

By: /s/ Jeffrey S. Weinstein
Jeffrey S. Weinstein
David A. Nelson
Samuel B. Weiss
Mound Cotton Wollan & Greengrass LLP
One New York Plaza, Fl. 44
New York, NY 10004
Tel: (212) 804-4200
Fax: (212) 344-8066
JWeinstein@moundcotton.com
DNelson@moundcotton.com
SWeiss@moundcotton.com

*Attorneys for Petitioners Certain Underwriters at Lloyds, London, Indian Harbor Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, General Security Indemnity Company of Arizona, United Specialty Insurance Company, Lexington Insurance Company, HDI Global*

*Specialty SE, Old Republic Union Insurance Company, GeoVera Specialty Insurance Company, and Transverse Specialty Insurance Company*