**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**CERTAIN UNDERWRITERS AT LLOYD'S,**
**LONDON, INDIAN HARBOR INSURANCE**
**COMPANY, QBE SPECIALTY INSURANCE**          No.1:22-cv-9849(LAP))
**COMPANY, STEADFAST INSURANCE**
**COMPANY, GENERAL SECURITY**
**INDEMNITY COMPANY OF ARIZONA,**
**UNITED SPECIALTY INSURANCE**
**COMPANY, LEXINGTON INSURANCE**          **OPPOSITION TO MOTION TO**
**COMPANY, HDI GLOBAL SPECIALTY SE,**          **COMPEL ARBITRATION**
**OLD REPUBLIC UNION INSURANCE**
**COMPANY, GEOVERA SPECIALTY**
**INSURANCE COMPANY, and TRANSVERSE**
**SPECIALTY INSURANCE COMPANY,**

                    **Petitioners,**

**v.**

**3131 VETERANS BLVD, LLC**

                    **Respondent.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

By:    William A. Barousse
       VOORHIES LAW FIRM, L.L.C.
       Energy Centre, Suite 2810
       1100 Poydras Street
       New Orleans, Louisiana 70163
       Phone: (504) 875-2223
       Fax: (504) 875-4882
       william@voorhieslaw.com
       Attorney for 3131 Veterans Blvd., LLC

**TABLE OF CONTENTS**

I.      INTRODUCTION……………………………………………………………….…….1

II.     FACTUAL BACKGROUND………………………………………………….…….2

III.    APPLICABLE LAW AND APPLICATION OF LAW…………………………….…….3

        A.      The Louisiana Insurance Code Invalidates the Arbitration Clause in the
                Policies…………………………………………………………………...…….3

        B.      The MFA reverse-preempts the Convention and the FAA……………………….7

        C.      The arbitration clause of the Policies is also not enforceable because it does not
                comply with the signature requirement of Article II of the Convention …………9

        D.      There is no legal basis for an arbitration panel to decide arbitrability because the
                purported delegation clause of the Policies is unenforceable…………………….12

        E.      The Domestic underwriters have no right to enforce the arbitration clause in the
                Policies…………………………………………………………………...…….14

        F.      Equitable Estoppel is not applicable. …………………………………………...….15

IV.     CONCLUSION……………………………………………………………………….17

# TABLE OF AUTHORITIES

## CASES

*1256 Hertel Ave. Associates, LLC, v. Calloway*, 761 F.3d 525 (2nd Cir. 2014)……………..……..5

*Abbott v. Abbott*, 560 U.S. at 1 10, 130 S.Ct. 1983 (2010)………………………………………9

*Bell v. Cendant Corp*., 293 F.3d 563 (2d Cir. 2002)……………………………………………..13

*Bergeron v. Richardson*, No. 2020-01409 (La. 06/30/21) 320 So. 3d 1109……………………...15

*Burge v. State,* 54 So. 3d 1110, 1113 (La. 2/11/2011)…………………………………………...7

*Certain Underwriters at Lloyd's, London v. Vintage Grand Condo. Ass'n, Inc*., 2019 WL 760802 (S.D.N.Y. Feb. 6, 2019)……………………………………………………………………………13

*Chambers v. Parochial Employees' Retirement System*, 398 So. 2d 102 (La. App. 3d Cir. 1981)………………………………………………………………………………………………..16

*Corpus Christi Independent School District v. Amrisc*, LLC, 2019 WL 20151696 (E.D. N.Y. 5/9/19) ……………………………………………………………………………………………13

*Czarina, LLC v. W.F. Poe Syndicate*, 358 F.3d 1286 (11th Cir. 2004)…………………………..12

*Courville v. Allied Professional Ins. Co*., 2013-0976 (La. App. 1 Cir. 6/5/15) 174 So.3d 659…..5

*Dedon GmbH v. Janus et Cie,* 2011 WL 666174 (S.D.N.Y. 2/8/11)……………………………..11

*Doucet v. Dental Health Plans Mgmt. Corp*., 412 So.2d 1383 (La.1982)…………………………5

*Facebook v. Duguid*, ___ U.S. ___, 141 S.Ct. 1163 at 1170, 209 L.Ed.2d 272 (2021) …………..12

*Frazer v. Day*, 292 So. 2d 870 (La. App. 1st Cir. 1974)…………………………………………16

*Gozlon-Peretz v. United States*, 498 U.S. 395, 407, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991)…….7

*G.E. Energy Power Conversion France SAS Corp. v. Outokumpu Stainless USA, LLC, U.S*., 140 S.Ct. 1637, 207 L.Ed.2d 1 (2020) ……………………………………………………..……...…12, 15

*Harren & Partner Ship Management de Mexico S.A.P.I. v. American Bureau of Shipping*, 2021 WL 361733 (S.D.N.Y. 7/7/21) …………………………………………………………………...…11

*Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391 (2d Cir. 2015)………………………..9

*Howard Trucking Co., Inc. v. Stassi*, 485 So.2d 915, 918 (La. 1986)………………………15, 16

*In re Succession of Bailey*, 11-147 (La. App. 5 Cir. 11/29/11) 82 So. 3d 322……………………16

*Kahn Lucas Lancaster, Inc. v. Lark International Ltd*., 186 F.3d 210 (2nd Cir.1999)……………………………………………………………………………9, 10, 11, 12

*Kuehn v. Citibank, N.A*., No. 12 Civ. 3287(DLC), 2012 WL 6057941, (S.D.N.Y. Dec. 6, 2012)……………………………………………………………………………………13

*La. State Trooper's Association, Inc. v. La. State Police Retirement Board,* 417 So. 2d 440 (La. App. 1st Cir. 1982)……………………………………………………………...…16

*Lilly v. Angelo*, 523 So. 2d 899, 903, (La. App 4th Cir. 1988)…………………………………17

*Locker v. Wilson,* 536 So. 2d 441 (La. App. 2d Cir. 1988)…………………………………...…16

*MB Indus., LLC v. CNA Ins. Co.*, 2011-0303 (La. 10/25/11) 74 So. 3d 1173…………...….…15, 17

*Medellin v. Texas*, 552 U.S. 491, 506, 128 S.Ct. 1346, 170 L.Ed.2d 190 (2008)…………………9

*Natofsky v. City of New York*, 921 F.3d 337, 345 (2nd Cir. 2019)………………………………7

*Packard Florida Motors Co. v. Malone*, 208 La. 1058, 24 So. 2d 75 (La. 1945)…………………16

*PaineWebber Inc. v. Bybyk*, 81 F.3d 1193 (2d Cir. 1996)…………………………………………13

*Palermo Land Co. v. Planning Commission,* 561 So. 2d 482 (La. 1990)………………………..16

*Port Finance Company v. Ber*, 45 So. 2d 404 (La. App. Orl. 1950)………………………………16

*Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010)……………………………………………13

*Robbins Tire & Rubber Co. v. Winnfield Retread, Inc*., 577 So. 2d 1189(La. App. 2d Cir. 1991)…………………………………………………………………………………...…16

*State v. Mitchell*, 337 So. 2d 1186 (La. 1976)……………………………………………………16

*Stephens v. American Intern. Ins. Co*., 66 F.3d 41 (2nd Cir. 1995)………………………...7, 8, 12

*Sarhank Group v. Oracle Corp*., 404 F.3d 657 (2d Cir. 2005)………………………………9, 12

*Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440 (3d Cir. 2003)……………………12

*Wilkinson v. Wilkinson*, 323 So.2d 120 (La. 1975)………………………………………………17

*Yang v. Majestic Blue Fisheries, LLC*, 876 F.3d 996 (9th Cir. 2017) ……………………………12

**CODES AND STATUTES**

9 U.S.C. §202…………………………………………………………….…...……14

15 U.S.C. § 1011…………………………………………………………….……7

15 U.S.C. § 1012…………………………………………………………...……7, 8

La. Admin. Code, Title 37, § 9013…………………………………………………6

La. Civil Code Art. 3……………………………………………………………15

Louisiana Revised Statute 1:3……………………………………………………4

Louisiana Revised Statute 22:1……………………………………………………..3

Louisiana Revised Statute 22:2…………………………………………………7, 8

Louisiana Revised Statute 22:442…………………………………..…… 4, 6, 16

Louisiana Revised Statute 22:443…………………………………………………...4

Louisiana Revised Statute 22:861………………………………………………6

Louisiana Revised Statute 22:868……………………………………………4, 5, 6, 7, 15, 16

**TREATIES**

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Article II (New York, 1958) ……………………………………………1, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18

## I.    INTRODUCTION

NOW INTO COURT, through undersigned counsel, comes Respondent, 3131 Veterans Blvd, LLC, ("3131 Veterans") to oppose the Motion to Compel Arbitration ("the Insurers' Motion") filed by Certain Underwriters at Lloyd's, London, Indian Harbor Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, General Security Indemnity Company of Arizona, United Specialty Insurance Company, Lexington Insurance Company, HDI Global Specialty SE, Old Republic Union Insurance Company, GeoVera Specialty Insurance Company, and Transverse Specialty Insurance Company ("the Insurers").

First, The Insurers' Motion must be denied because the arbitration clause contained in the Policies of insurance issued to 2121 Borders, LLC ("2121 Borders") under account number 815222 ("The Policies") is not valid under the Louisiana Insurance Code, which governs 3131 Veterans' claims against the Insurers, and the Louisiana Insurance Code is not preempted by either the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention") nor the Federal Arbitration Act ("the FAA") pursuant to the McCarran-Ferguson Act ("MFA").

Second, there is not a valid arbitration agreement because there was no written agreement to arbitrate signed by 3131 Veterans or 2121 Borders as required by Section II of the Convention.

Third, the only insurers against whom 3131 Veterans is seeking damages have no rights under the Convention because they are not foreign insurers.

Fourth, the only insurers against whom 3131 Veterans is seeking damages cannot rely on the principal of equitable estoppel to compel arbitration because 1) there is not an agreement to arbitrate signed by the 2121 Borders or 3131 Veterans, 2) because applying estoppel would conflict

with Louisiana law, and 3) because the Insurers have not even pled any facts that could support the application of equitable estoppel.

Finally, since there is a not a valid, enforceable agreement to arbitrate, the "gateway" issue of arbitrability cannot be decided by an arbitrator.

For all of these reasons, the relief sough in the Insurers' Motion must be denied.

## II.    FACTUAL BACKGROUND

This case involves an attempt by the Insurers to prevent 3131 Veterans from asserting its rights in a lawsuit pending in Louisiana state court ("the Louisiana lawsuit") against all non-foreign underwriters of the Policies ("the domestic underwriters"). The Louisiana lawsuit was filed before the filing of the instant suit. The Policies insured one property located in Jefferson parish, Louisiana.[1] The Policies was not signed by 3131 Veterans or 2121 Borders.[2] The Louisiana lawsuit concerns damage to the property caused by Hurricane Ida.

The Policies contains as section entitled CONTRACT ALLOCATION ENDORSEMENT which states

> This insurance is effected with certain insurance underwriters (hereinafter called the "Underwriters"). The following words shall be deemed to be synonymous: "Underwriters", "Insurers" and "Company".
> The liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule below.
> The liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any Underwriters pursuant to this contract. An Underwriter shall not have its liability hereunder increased or decreased by reason of failure or delay of another Underwriter, its successors, assigns, or legal representatives….**This contract shall**

---

[1]    A parish is a political subdivision equivalent to a county in all other states.

[2]    See Rec. Doc. 4-1.

**be constructed as a separate contract between the Insured and each of the Underwriters**.[3] (emphasis added).

3131 Veterans, as the current owner of the property insured under the Policies and as assignee to the rights of 2121 Borders under the Policies, filed suit against the domestic underwriters in the Louisiana lawsuit. 3131 Veterans did not name certain Underwriters at Lloyds London and/or HDI Global Specialty SE ("the foreign underwriters") as defendants in the Louisiana lawsuit, and instead affirmatively pled that it is not making a claim against the foreign underwriters for any further payments and was waiving any further rights against the foreign underwriters.[4]

III.   **APPLICABLE LAW AND APPLICATION OF LAW**

    A.   **The Louisiana Insurance Code Invalidates the Arbitration Clause in the Policies**

Several Louisiana statutes contained in the Louisiana Insurance Code, Louisiana Revised Statute 22:1., et. *seq.,* invalidate the Arbitration Clause in the Policies under Louisiana law.[5]

All of the insurers hold surplus lines licenses in Louisiana.[6] All of the insurers are classified as Approved Unauthorized Surplus Lines Insurers by the Louisiana Department of Insurance.[7] Surplus lines insurers are addressed Chapter 2 of the Louisiana Insurance Code in Part I entitled "Kinds of Insurers", subpart O entitled "Surplus Lines." ("the Surplus lines Subpart").

---

[3]   See Rec. Doc. 3-1 at page 6.

[4]   See Rec. Doc. 4-2, at page 5.

[5]   See La. Rev. Statute 22:1 stating "This Title shall be known and may be cited as the "Louisiana Insurance Code."

[6]   See Exhibit A. See also Rec. Doc. 4-1 at page 108 identifying the insurance policy as being delivered as surplus lines coverage.

[7]   See Exhibit B.

Louisiana Revised Statute 22:442, contained in the Surplus Lines Subpart states "An unauthorized insurer **shall be sued, upon any cause of action arising in this state under any contract issued by it as a surplus lines contract, pursuant to this Subpart, in the district court of the parish in which the cause of action arose**. (emphasis added). La. Rev. Stat. 22:442 (A). The Louisiana legislature has instructed "[t]he word 'shall' is mandatory and the word 'may' is permissive." La. Rev. Stat. 1:3.

Louisiana Revised Statute 22:443, contained in the surplus lines subpart, exempts certain surplus insurers from the provision contained in La. Rev. Stat. 22:442 mandating that a surplus lines insurer shall be sued in the parish where the action of arises. However, the Policies is not one of types of surplus lines insurance identified in La. Rev. Stat. 22:443 not subject to La. Rev. Stat. 22:442.[8] Consequently, the Policies is subject to the direction from the Louisiana legislature that a surplus lines insurer **shall** be sued in the district court of the parish where the cause of action arose.

Part A of Louisiana Revised Statute 22:868, titled "Limiting actions; jurisdiction; venue" and contained in a section of the Louisiana Insurance Code addressing all types of insurance policies, prohibits "any condition, stipulation, or agreement" in an insurance policy "requiring it to be construed according to the laws of any other state or country..." or "depriving the courts of

---

[8]    La. Rev. Stat. 22:443 exempts the following types of insurers from the mandate contained in La. Rev. Stat. 22:442 that a surplus lines insurer shall be sued in the parish where the action of arises:

      (1) Ocean marine and foreign trade insurance.
      (2) Insurance on property or operation of railroads engaged in interstate commerce.
      (3) Insurance of aircraft owned or operated by manufacturers of aircraft, or of aircraft operated in scheduled interstate flight, or cargo of such aircraft, or against liability, other than workers' compensation and employer's liability, arising out of the ownership, maintenance, or use of such aircraft. La. Rev. Stat. 22:443 (A).

Page 4

this state of the jurisdiction or venue of action against the insurer." Part C of Louisiana Revised Statute 22:868 further states that "[a]ny such condition, stipulation, or agreement in violation of this Section shall be void, but such voiding shall not affect the validity of the other provisions of the contract."

Stated differently, Louisiana Revised Statute 22:868 renders arbitration provisions in insurance policies unenforceable. See *Courville v. Allied Professional Ins. Co*., 2013-0976 (La. App. 1 Cir. 6/5/15) 174 So.3d 659, 666 citing La. Rev. Stat. 22:868 and stating "Louisiana has enacted a statute that effectively prohibits the enforcement of arbitration provisions in the context of insurance disputes"); *Doucet v. Dental Health Plans Mgmt. Corp*., 412 So.2d 1383, 1384 (La.1982) ("Classification of the contract at issue as an insurance contract renders the arbitration provisions of that contract unenforceable under [Louisiana Revised Statutes § 22:868].").

Part D of La. Rev. Stat. 22:868 states "[t]he provisions of Subsection A of this Section shall not prohibit a **forum or venue selection clause** in a policy form that is not subject to approval by the Department of Insurance." However, Part D does not exempt any Louisiana insurers from the provision of Part A which prohibits depriving Louisiana courts of **jurisdiction** or requiring policies to be construed according to the **laws of other states**. Given that that enforcement of the arbitration clause of the Policies would deprive the court hearing the Louisiana lawsuit of jurisdiction and displace Louisiana law with New York law is void under Louisiana law. Further, the exemptions contained in Part D of La. Rev. Stat. 22:868 don't apply to the Insurers as evidenced by the legislative history of the last revision to La. Rev. Stat. 22:868.[9]

---

[9]     Part D of La. R.D. 22:868 was added in 2020 pursuant to an act introduced by Senator Jay Luneau. 2020 La. Sess. Law Serv. Act 307 (S.B. 156) (West). 2022 LA S.B. 484 (NS). It is "fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature." *1256 Hertel Ave. Associates, LLC, v. Calloway*, 761 F.3d 525, 259 (2nd Cir. 2014) (internal citation omitted).

La. Rev. Stat. 22:868, when read in conjunction with La. Rev. Stat. 22:861 and given the legislative history of La. Rev. Stat. 22:868, clearly indicates that the arbitration clause in the Policies is unenforceable regardless of the fact that the Insurers are surplus lines insurers. However, to the extent that there is any doubt about the legislature's intent regarding regulation of surplus lines insurers and their subjection to the courts of Louisiana, La. Rev. Stat. 22:442 clearly indicates that surplus lines insurers **shall be sued** in the in the district court of the parish in which the cause of action against them arises. Under both federal and Louisiana law, a more specific statute control over a general one. ("It is an established canon of construction that a specific

---

In 2022, Senator Luneau introduced a bill to restate Part D of La. Rev. Stat. 22:868 to clarify his own previous bill to "[t]he provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance **pursuant to the provisions of R.S. 22:861(F) regarding special commercial entities**." Consequently, Senator Luneau clearly intended that Part D of the La. Rev. Stat. 22:868 apply to special commercial entities identified in La. Rev. Stat. 22:861(F).

La. Rev. Stat. 22:861 is contained in a section of the Louisiana Insurance Code addressing all types of insurance policies and states that

> No basic insurance policy form, **other than fidelity or surety bond forms**, or application form where written application is required and is to be attached to the policy, or be a part of the contract or printed life, annuity, or health and accident rider or endorsement form **shall be issued, delivered, or used unless it has been filed with and approved by the commissioner of insurance**. La. Rev. Stat. 22:861(A)(emphasis added)

However, part F of La. Rev. Stat. 22:861 states that "Insurers negotiating with and insuring special commercial entities shall be exempt from the form filing and approval requirements of this Section." Special commercial entities are defined in the insurance commissioner's regulations, and they include policyholders that maintain aggregate annual insurance premiums exceeding $200,000 and may include companies employing more than 50 employees, municipalities with populations of at least 50,000 and public entities with operating budgets of at least $20 Million. La. Admin. Code, Title 37, § 9013. Consequently, La. Rev. Stat. 22:861 provides all policy forms – except fidelity or surety bond firm or those special commercial entities - must be filed and approved by the commissioner of insurance.

There is no contention of evidence that 3131 Veterans or 2121 Borders would be considered a "special commercial entity" under Louisiana law.

Page 6

provision "controls over one of more general application." *Natofsky v. City of New York*, 921 F.3d 337, 345 (2nd Cir. 2019) citing *Gozlon-Peretz v. United States*, 498 U.S. 395, 407, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991); "It is a well-settled canon of statutory construction that the more specific statute controls over the general statute." *Burge v. State,* 54 So. 3d 1110, 1113 (La. 2/11/2011)). Consequently, the extent there is any perceived conflict between La. Rev. Stat. 22:868 and La. Rev. Stat. 22:242, La. Rev. Stat. 22:242 indicating that surplus lines insurers **shall** be sued in the in the district court of the parish in which the cause of action against them arises controls.

In sum, the plain language of multiple statutes contained in the Louisiana Insurance Code and the legislative history or La. 22:868 indicate that the arbitration clause of the Policies is not enforceable in Louisiana because it conflicts with the mandates of the Louisiana Insurance Code. And, as explained below, federal law does not preempt Louisiana law on the issue of enforcement of the arbitration clause of the Policies.

**B.     The MFA reverse-preempts the Convention and the FAA**

The MFA provides that "regulation and taxation by the several States of the business of insurance is in the public interest" (15 U.S.C.A. § 1011), that "[t]he business of insurance, and every person engaged therein, **shall be subject to the laws of the several States which relate to the regulation or taxation of such business**," (15 U.S.C.A. § 1012(a)(emphasis added)),  and that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." (15 U.S.C.A. § 1012(a)). The MFA "preserves state statutes, enacted "for the purpose of regulating the business of insurance," from preemption and leaves the regulation of the business of insurance to the states." *Stephens v. American Intern. Ins. Co*., 66 F.3d 41, 43 (2nd Cir. 1995).

There is no dispute that the Louisiana Insurance Code was enacted for the purpose of regulating the business of insurance. (See La. Rev. Stat. 22:2 stating "Insurance is an industry affected with the public interest and **it is the purpose of this Code to regulate that industry in all its phases**…The commissioner of insurance shall have the authority to make reasonable rules and regulations, not inconsistent with law, to enforce, carry out, and make effective the implementation of this Code.")(emphasis added). There is no dispute that "the FAA does not specifically relate to insurance." *Stephens*, 66 F.3d at 44. Consequently, the FAA cannot invalidate, impair or supersede the Louisiana Insurance Code pursuant to the MFA.

In *Stephens*, the Second Circuit addressed whether the Convention preempts state insurance laws. In addressing whether the Convention superseded a Kentucky statute that prohibited arbitration, the *Stephens* court stated "The argument is that under the Supremacy Clause the Convention supersedes the Kentucky Liquidation Act. This argument fails because the Convention is not self-executing, and therefore, relies upon an Act of Congress for its implementation. See 9 U.S.C. §§ 201–208 (1994)." *Stephens,* at 66 F.3d 45. The Stephens Court further stated

> McCarran–Ferguson states "[n]o Act of Congress shall be construed to ... supersede any law ... regulating the business of insurance." 15 U.S.C. § 1012(b) (1994). Accordingly, the implementing legislation does not preempt the Kentucky Liquidation Act—which, as we have already held, is a law "regulating the business of insurance." The Convention itself is simply inapplicable in this instance.

*Stephens* is directly on point and rejects the exact premise of the Insurers' Motion: that the Convention and/or the FAA mandates that this Court compel arbitration.

In short, the conflict between the arbitration clause in the Policies and the directives in the Louisiana Insurance Code must be resolved in finding the Louisiana Insurance Code prevails over

the language of the Policy and therefore the arbitration clause cannot be enforced because it does not comply with the Louisiana Insurance Code.

**C.      The arbitration clause of the Policies is also not enforceable because it does not comply with the signature requirement of Article II of the Convention**

The Arbitration clause contained in the Policies is also not enforceable under the Convention because it was not signed by 3131 Veterans or 2121 Borders.

In order to determine whether the arbitration clause should be enforced, this Court "…must answer two questions: (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 394 (2d Cir. 2015).

Article II of the Convention ("Article II") states, in relevant part,

1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

2. The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, **signed by the parties** or contained in an exchange of letters or telegrams. (emphasis added).
Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Article II (New York, 1958)

"The interpretation of a treaty, like the interpretation of a statute, begins with its text." *Abbott v. Abbott*, 560 U.S. at 1 10, 130 S.Ct. 1983 (2010) (quoting *Medellin v. Texas*, 552 U.S. 491, 506, 128 S.Ct. 1346, 170 L.Ed.2d 190 (2008))

The Second Circuit extensively addressed Article II in *Kahn Lucas Lancaster, Inc. v. Lark International Ltd.*, 186 F.3d 210, (2nd Cir.1999), abrogation on other grounds recognized by *Sarhank Group v. Oracle Corp.*, 404 F.3d 657, 660 fn.2 (2d Cir. 2005). In *Kahn Lucas,* following a thorough analysis of the text and legislative history of Article II, the Second Circuit reversed an

order compelling arbitration because the arbitration clause in the contract was not signed by one of the parties to it.

Beginning with the text of Article II, the court concluded that the comma before the phrase "signed by the parties" indicated that the phrase modified both "an arbitral clause in a contract" and "an arbitration agreement." *Kahn Lucas,* 186 F. 3d at 217. Consistent with the long-standing rules of punctuation, the *Kahn Lucas* court explained that a modifying phrase that is set off from a series of antecedents by a comma applies to each of those antecedents. The court noted that that interpreting the phrase "signed by the parties" to modify only an "arbitration agreement" would render the comma superfluous, thereby violating the rule against surplusage.

In addition to analyzing English grammar, the *Kahn Lucas* court also examined the text of the Convention in other languages. The *Kahn Lucas* court noted that

- "…the Convention exists in five official languages—French, Spanish, English, Chinese, and Russian—of equal authenticity", *Kahn Lucas*, 186 F.3d at 216;

- "Of the five official languages, English, French, and Spanish were the working languages of the United Nations Conference on International Commercial Arbitration", *Id.*

- "In the French- and Spanish-language versions, the word for 'signed' appears in the plural form, 'signes ' and 'firmados' respectively", but "If…only an arbitration agreement need be signed by the parties, the French-language version would utilize the verb "signe " and the Spanish "firmado."*Id*. at 217;

- and "[b]ecause each of the two antecedents is couched in the singular, the modifier unambiguously applies to both of them." *Id.*

Based on the foregoing, the *Kahn Lucas* court held that French and Spanish versions of Article II indicated that "signed by the parties" modified both "an arbitral clause in a contract" and "an arbitration agreement."

Finally, the *Kahn Lucas* court stated that "to the extent the plain meanings of the non-English language versions of the Convention do not resolve any ambiguity that exists in the English-language version, the legislative history of article II puts the matter to rest." *Id*. at 218. The court noted

> [t]he text of article II, as reported by the Conference's Working Group, and subject only to modification by the Drafting Committee for form, not substance, Summary of the 23d Meeting, U.N. Conference on Int'l Commercial Arbitration, U.N. ESCOR, E/Conf.26/SR.23 at 4, 7 (Sept. 12, 1958), reverses the terms "arbitration agreement" and "arbitration clause in a contract." The Working Group text thus reads: "The expression 'agreement in writing' shall mean an arbitration agreement or an arbitration clause in a contract signed by the parties, or an exchange of letters or telegrams between those parties."2 Consideration of the Draft Convention on the Recognition and Enforcement of Foreign Arbitral Awards, U.N. Conference on Int'l Commercial Arbitration, U.N. ESCOR, E/Conf.26/ L.59, Agenda Item 4, ¶ 2 (June 6, 1958). Therefore, unless the modifier "signed" in the Convention applies to both antecedents, the Drafting Committee's editorial changes would amount to an unintended, and unauthorized, substantive amendment to article II, section 2. I*d*. at 218.

The holding of *Kahn Lucas* mandating that an arbitration provision must be signed by both parties to be enforceable under Article II of the Convention is still the law of the Second Circuit. See *Harren & Partner Ship Management de Mexico S.A.P.I. v. American Bureau of Shipping*, 2021 WL 361733 at *1 (S.D.N.Y. 7/7/21) citing *Kahn Lucas* and stating "An arbitration "agreement in writing" is enforceable when it is "signed by the parties or contained in an exchange of letters or telegrams." See also *Dedon GmbH v. Janus et Cie*, 2011 WL 666174 at *3 (S.D.N.Y. 2/8/11)

stating "Kahn Lucas' holding precluding enforcement of an unsigned arbitration agreement pursuant to the New York Convention survives *Sarhank* and remains good law."[10]

The United States Supreme Court recently affirmed that a comma that follows multiple nouns or verbs modifies all nouns or verbs (as opposed to only the last noun or verb) in *Facebook v. Duguid*, ___ U.S. ___, 141 S.Ct. 1163 at 1170, 209 L.Ed.2d 272 (2021) in which is stated "Under conventional rules of grammar, "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series," a modifier at the end of the list "normally applies to the entire series." (internal citation omitted).

For the foregoing reasons, even if the Convention preempted the Louisiana Insurance Code (which it does not pursuant to *Stephens*) the Convention does not mandate arbitration of 3131 Veterans' claims because neither 3131 Veterans nor 2121 Borders signed an agreement to arbitrate with the Insurers.

> **D.      There is no legal basis for an arbitration panel to decide arbitrability because the purported delegation clause of the Policies is unenforceable**

Despite the foregoing, the Insurers cite various cases for the proposition that an arbitrator should decide whether 3131 Veterans' claims against the domestic underwriters is subject to arbitration. Significantly, none of the cases cited by the Insurers addressed a dispute over the

---

[10]      The Third Circuit and Eleventh Circuit have also reached the same conclusion as *Kahn Lucas* (see *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 449 (3d Cir. 2003) following *Kahn Lucas* to hold that the Convention Treaty's "signed by the parties" requirement applied to both "an arbitral clause within a contract or a separate arbitration agreement"; see also *Czarina, LLC v. W.F. Poe Syndicate*, 358 F.3d 1286, 1290–91 (11th Cir. 2004) following *Kahn Lucas* to affirm the district court's refusal to enforce an arbitration award based on an unsigned arbitration clause). The Ninth Circuit also followed the holding in *Kahn Lucas* that the signature requirement applies to both an arbitral clause within a contract or a separate arbitration agreement in *Yang v. Majestic Blue Fisheries, LLC*, 876 F.3d 996 (9th Cir. 2017), abrogated on other grounds by *G.E. Energy Power Conversion France SAS Corp. v. Outokumpu Stainless USA, LLC, U.S.*, 140 S.Ct. 1637, 207 L.Ed.2d 1 (2020).

**enforceability** of an arbitration agreement, and instead only addressed the **scope** of an arbitration provision.

As noted in *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) (cited by the insurers)"…the issue of arbitrability may only be referred to the arbitrator if "there is 'clear and unmistakable' evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." (internal citations omitted) However, even if this Court found that the language of the Policies contained a clear delegation to an arbitrator to determine arbitrability of 3131 Veterans' claims, the delegation clause should not be enforced by the Court if 3131 Veterans "has shown that the delegation [clause] itself is unenforceable*." Corpus Christi Independent School District v. Amrisc*, LLC, 2019 WL 20151696 at \*4 (E.D. N.Y. 5/9/19) citing *Kuehn v. Citibank, N.A.*, No. 12 Civ. 3287(DLC), 2012 WL 6057941, at \*4 (S.D.N.Y. Dec. 6, 2012) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010)).

In the present case, the delegation clause (as well as the others provision of the arbitration clause) is unenforceable for the reasons explained in the previous sections of this memorandum because Louisiana law controls the enforceability of it, and it is void under Louisiana.  *Corpus Christi Independent School District*, the lead case cited by the Insurers for the proposition that the language of the Policies "clearly and unmistakably delegate[s] the authority to adjudicate' plaintiff's claim to the arbitrator" specifically notes that such language does not delegate the issues of arbitrability to the arbitrator when the delegation clause itself is unenforceable as it is here. The other two cases cited by the Insurers on this issue - *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193 (2nd Cir. 1996) and *Certain Underwriters at Lloyd's, London v. Vintage Grand Condo. Ass'n, Inc.*, 2019 WL 760802 (S.D.N.Y. Feb. 6, 2019) – likewise did not involve challenges to the

enforceability of a delegation clause that is present here but instead addressed the scope of a delegation clause.

Because the delegation clause of the Policies, to the extent that this court may determine the Policies contains a delegation clause) is unenforceable under Louisiana law, this court- and not an arbitrator- must decide the Insurers' Motion to Compel arbitration.

> **E.      The Domestic underwriters have no right to enforce the arbitration clause in the Policies**

Even if the arbitration provision of the Policies was enforceable (which it is not) and even if the Louisiana Insurance Code was preempted by the Convention (which it is not), the domestic underwriters would still not be entitled to invoke arbitration under the Convention.

Plaintiff and the domestic underwriters are all citizens of the United States. Consequently, the domestic underwriters could only enforce Arbitration Clause and Choice of Law clause of the Policies pursuant to 9 U.S.C. §202 which states that

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States. 9 U.S.C. §202.

The Policies does not involve property located abroad and does not envisage performance or enforcement abroad. The Insurers have not even attempted to explained who the Policies would have any reasonably relation with one or more foreign states vis-à-vis 3131 Veterans and the domestic underwriters, and instead simply pronounce without authority that 3131 Veterans' waiver of claims against Lloyd's and HDI does not affect the domestic underwriters rights under the

convention. In short, the Insurers have not provided any support for their contention that they could compel arbitration pursuant to the Convention under the circumstances present in this case: in which 3131 Veterans has affirmatively waived rights against the foreign underwriters.

**F.    Equitable Estoppel is not applicable**

The contention on page 3 of Insurers' Motion that "At all times relevant, the Insurers, who jointly subscribe to the Policy, have acted in concert in the investigation, evaluation, and payment made subject of the Respondent's claims" appears to be a vague suggestion that the domestic underwriters can rely on the doctrine of equitable estoppel to invoke arbitration even though 3131 Veterans has waived its right to further recovery from the foreign underwriters. However, even if this Court would consider the use of equitable estoppel to compel arbitration despite the absence of consent to arbitrate by any entity insured under the Policies or 3131 Veterans, equitable estoppel is not supported by law. The Supreme Court in *G.E. Energy Power Conversion France SAS Corp. v. Outokumpu Stainless USA, LLC, U.S*., 140 S.Ct. 1645 (2020) that "the Convention requires courts to rely on domestic law to fill the gaps; it does not set out a comprehensive regime that displaces domestic law." Given that the choice of law provision in the arbitration clause is unenforceable under La. Rev. Stat. 22:868, Louisiana law regarding equitable estoppel governs the Insurers' attempt to invoke it.

The Louisiana Supreme Court has held that equitable estoppel is a jurisprudentially created type of estoppel that is only available in the absence of legislation and custom. *Bergeron v. Richardson*, No. 2020-01409 (La. 06/30/21) 320 So. 3d 1109, 1114 (citing La. Civil Code Art. 3). The Court further recognizes that equitable estoppel must be "narrowly construed" because "estoppel is not favored in our law . . . and estoppel is a doctrine of last resort." *MB Indus., LLC v. CAN Ins. Co.*, 2011-0303 (La. 10/25/11) 74 So. 3d 1173, 1181 (quoting *Howard Trucking Co.,*

*Inc. v. Stassi*, 485 So.2d 915, 918 (La. 1986).  Furthermore, "there is no statutory material or body of jurisprudence that justifies its use." *Howard Trucking Co. Inc. v. Stassi*, 485 So.2d 915, 918 (La. 1986), *cert. den.*, 479 U.S. 948, 107 S.Ct. 432. In the *Howard Trucking* decision, the Louisiana Supreme Court clarified that, in modern times, the doctrine has been used "only to disallow a claim that the opponent ought not to be able to make a certain claim or defense." *Howard Trucking Co.*, Inc. 485 So.2d at 918.

Myriad Louisiana courts have held that "equitable considerations and estoppel cannot prevail in conflict with the positive written law." *Palermo Land Co. v. Planning Commission,* 561 So. 2d 482 (La. 1990); *Locker v. Wilson,* 536 So. 2d 441 (La. App. 2d Cir. 1988), *writ denied*, 537 So. 2d 210 (La. 1989); *La. State Trooper's Association, Inc. v. La. State Police Retirement Board,* 417 So. 2d 440 (La. App. 1ˢᵗ Cir. 1982); *Robbins Tire & Rubber Co. v. Winnfield Retread, Inc*., 577 So. 2d 1189, 1192, 1991 (La. App. 2d Cir. 1991); *Packard Florida Motors Co. v. Malone*, 208 La. 1058, 24 So. 2d 75 (La. 1945); *State v. Mitchell*, 337 So. 2d 1186, 1188, (La. 1976); *Chambers v. Parochial Employees' Retirement System*, 398 So. 2d 102 (La. App. 3d Cir. 1981), *writ denied*, 400 So. 2d 1382 (La. 1981); *Frazer v. Day*, 292 So. 2d 870 (La. App. 1ˢᵗ Cir. 1974); *Port Finance Company v. Ber*, 45 So. 2d 404 (La. App. Orl. 1950); *In re Succession of Bailey*, 11-147 (La. App. 5 Cir. 11/29/11) 82 So. 3d 322, 326. Instead, "[i]t is applicable only in the absence of express law." *Frazer v. Day*, 292 So. 2d 870, 874, (La. App. 1 Cir. 1974) (overruled on other grounds). Equitable estoppel cannot be applied in this case because it conflicts with express written law, namely, La. Rev. Stat. 22:868(A), which directly governs whether arbitration clauses may be included in insurance contracts, and La. Rev. Stat. 22:442 which requires that surplus lines insurances "shall be sued, upon any cause of action arising in this state under any contract issued by it as a surplus lines contract, in the district court of the parish in which the cause of action arose."

Finally, even if the doctrine of equitable estoppel applied, its prerequisites have not been alleged, much less satisfied, in this case. Louisiana courts have ruled that in the "rare instances" when it is applied, three elements must be present: (1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of that reliance. *Wilkinson v. Wilkinson*, 323 So.2d 120 (La. 1975); *see also Lilly v. Angelo*, 523 So. 2d 899, 903, (La. App 4th Cir. 1988).

> In discussing the application of equitable estoppel, the Louisiana Supreme Court observed:
>
> Strictly speaking, equitable estoppel applies only where a party has made false or misleading representations of fact and the other party justifiably relied on the representation. We must narrowly construe this argument, as estoppel is not favored in our law, and estoppel is a doctrine of last resort. Because MBI's decision not to pursue an appeal was not a representation of fact which Durio or Weinstein justifiably relied on to their detriment, equitable estoppel does not apply. *MB Indus., LLC v. CAN Ins. Co*., 2011-0303 (La. 10/25/11) 74 So. 3d 1173, 1180-1181 (internal citations and quotations omitted).

The Insurers have not alleged, much led provided any evidence, that the Named Insureds or 3131 Veterans have made any misrepresentations and that the Insurers relied upon them.

In sum, the arbitration clause is not enforceable because neither the Named Insureds nor 3131 Veterans agreed to arbitrate, because application of the doctrine of equitable estoppel would directly conflict with Louisiana law, and because the Insurers have not even alleged elements necessary to rely upon the doctrine of equitable estoppel.

## IV.    CONCLUSION

3131 Veterans' cause of action which The Insurers are seeking to arbitrate arose in Louisiana and concerns property insured in Louisiana. As such, the Louisiana Insurance Code provides that the cause of action must be litigated in Louisiana. Neither the Convention nor the FAA preempt the Louisiana Insurance Code under the clear law of this Circuit. Even if the Convention preempted the Louisiana Insurance code, the Policies does not meet the definition of

an agreement in writing under Article II of the Convention because it was not signed by insured under the Policies – 2121 Borders - nor 3131 Veterans. Because the delegation clause of the Policies is not enforceable, this Court and not an arbitrator must decide the Insured's Motion. Further, 3131 Veterans has waived its rights against the foreign underwriters, and the domestic underwriters have not shown how they could avail themselves under Article II of the Convention under the facts of this case. Finally, the domestic underwriters cannot rely on equitable estoppel to claim the right to compel arbitration, since neither 3131 Veterans nor 2121 Borders agreed to arbitrate with the Insurers in writing.

Date submitted: December 19, 2022

Respectfully submitted,

s/ William Barousse
VOORHIES LAW FIRM, L.L.C.
William A. Barousse
william@voorhieslaw.com
Energy Centre, Suite 2810
1100 Poydras Street
New Orleans, Louisiana 70163
Phone: (504) 875-2223
Fax: (504) 875-4882
**Attorney for 3131 Veterans Blvd., LLC**